**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN F. SMITH,**

      **Petitioner,**                **CASE NO. 2:11-CV-844
JUDGE WATSON
MAGISTRATE JUDGE ABEL**

**ROBIN KNAB, WARDEN,**

      **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner John F. Smith, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. §2254.  This matter is before the Magistrate Judge on the petition, Respondent's *Return of Writ*, Petitioner's *Traverse,* and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Following a jury trial, Smith was convicted of felonious assault and involuntary murder. During a playground confrontation, Smith punched the victim, Bryan Biser, in the head with his closed fist. Biser suffered a concussion and was taken to the emergency room. Against medical advice, he refused further treatment. Biser died four days later. The coroner ruled the cause of death was homicide due to blunt force craniocerebral injuries. A forensic neuropathologist testified at trial that the cause of death was diabetic ketoacidosis. The damage to Biser's frontal lobes affected his cognitive ability and caused him to become apathetic, uninhibited and disinterested. The head injuries contributed to his death by adversely affecting his ability to look after himself.

Although defense counsel effectively cross-examined the forensic neuropathologist, he offered no expert evidence regarding the cause of death. Smith filed a postconviction petition

alleging that his attorney's failure to investigate the cause of death and offer expert testimony about it denied him the effective assistance of counsel at trial. He supported the petition with the expert opinion of Dr. Elena Christofides that Biser's poor control of his diabetes caused his death and that the assault was medically unrelated to that cause of death. Dr. Christofides specifically concluded that Biser was taking non-prescription insulin that was inappropriate to treat his diabetes; that medical evidence indicated his diabetes was uncontrolled at the time of the assault; that he overdosed on insulin; that if his head injuries had been the cause of his overdose of insulin, he would have been in a diabetic coma within 24-48 hours after the assault; and that Biser's activities following the assault were inconsistent with the head trauma being the cause of his death.

The postconviction petition was also supported by an affidavit from Smith's postconviction counsel that she had talked with his trial attorneys, who said they consulted an expert regarding the victim's head injury but did not investigate the victim's diabetes or consult an endocrinologist.

The Ohio Court of Appeals held that the claim was based on facts of record and, therefore, barred by *res judicata* because ineffective assistance of trial counsel could have been raised on direct appeal. That decision would appear to be wholly contrary to the *State v. Perry* rule because the claim of ineffective assistance of counsel is based on facts not of record--trial counsel's alleged failure to adequately investigate the cause of death and Dr. Christofides' expert opinion on the cause of death. See, *State v. Cole,* 2 Ohio State 3d 112, 114  (1982)(H: Defendant represented by new counsel on direct appeal must assert all his claims of ineffective assistance of trial counsel that "could fairly be determined without examining evidence outside the record;"

and such claims not presented on direct appeal are barred by *res judicata* from being considered

in postconviction relief).

The question presented is whether a federal habeas corpus court must enforce the state

court procedural default when that ruling is unsupported in fact and in law. See, *Greer v.*

*Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001).

## FACTS and PROCEDURAL HISTORY

The Ohio Fourth District Court of Appeals summarized the facts supporting Smith's

conviction as follows:

> On April 15, 2005, Bryan Biser spent the afternoon socializing with
> neighbors at the Hokolesqua Apartments just outside Frankfort, Ohio.
> Biser sat outside with his neighbor, Shanna Knapp, and split a six-
> pack of beer with her while watching the children playing in a
> playground just across the parking lot. As they watched the children,
> two of the kids around the age of five got into a fight. One of the
> children was a distant relative of Smith's.
>
> When Smith learned that his nephew's child had been in a fight, he
> walked over to the playground and screamed obscenities at the
> children. Smith encouraged his five-year-old relative to beat up the
> other child. Ms. Knapp overheard Smith and approached him near the
> playground. Ms. Knapp told Smith to stop yelling obscenities and
> encouraging the children to fight. Ms. Knapp then got into an
> argument with Smith's nephew, John Rawlings.
>
> Biser approached Ms. Knapp and Rawlings in the parking lot and
> attempted to stop the arguing by asking everyone to calm down.
> Smith then walked around a car towards Biser, yelled an obscenity at
> him, and hit him with a closed fist on the left side of his head while
> Biser stood with one hand to his side and one hand holding a
> beverage cup. Biser never raised his arms, squared to fight, or said a
> threatening word.
>
> As Biser crumpled to the ground, the right side of his face hit a
> parked car, and then his head hit the pavement. Smith "danced" over
> Biser, as he lay unconscious, taunting him to get up and fight and
> challenging everyone else to fight him. Biser remained on the ground

while a neighbor, Twila Jones, called 911. One of the children alerted Amy Preston, the apartment complex manager, who was also a nursing assistant, to attend to Biser.

Approximately fifteen minutes after receiving the call, emergency medical technicians (EMTs) Todd Smith and Sharon Flannery arrived on the scene, along with EMT trainee Marilyn Chaffin. Biser regained consciousness, and the EMT's began treating his wounds and transported him to Adena hospital. Biser stated to the EMT's that he was diabetic and had taken his insulin that day. However, the EMT's were not able to take his blood-glucose level because the Accu-check machine malfunctioned. Chaffin testified that she noticed one of Biser's pupils was bigger than the other, but she failed to note this in her report.

Dr. Kashubeck examined Biser at the emergency room of Adena Hospital. In his report, he noted that Biser's pupils were round and equal in size, and that Biser denied any pain anywhere. The report also noted that Biser complained of a laceration to his right eye and a bump to the back of the head, and that he answered questions and followed commands appropriately. Biser refused emergency room treatment for his head injuries and his diabetes, despite an elevated blood-glucose level of 465. Biser stated that he had insulin to treat the diabetes at home and did not want to purchase more at the hospital. He also refused a CAT Scan, which the doctor had recommended. The doctor discharged Biser from the hospital, but ordered him to return immediately if he experienced any vomiting, confusion or vision problems.

Ms. Preston and Ms. Jones went to check on Biser following his return from the hospital that same day, April 15, 2005. Ms. Preston testified that Biser seemed confused and did not remember being involved in a fight, but, instead, told her he had been singing karaoke that night. He acknowledged being at the emergency room and gave Ms. Preston his paperwork from that visit. The next day, April 16, 2005, Ms. Preston and Ms. Jones went again to check on Biser. Ms. Jones testified that Biser did not invite them in, but cracked the door and told them he felt sick to his stomach and asked them to leave him alone.

Biser's cousin, Beth Spangler testified that she visited Biser on three separate occasions on April 16, 2005. She first stopped by in the morning and gave him Advil for his headache. She stopped by again at 1:00 pm, and he continued to complain that his head hurt, and he wanted everyone to go away. Finally, she returned at 5:00 pm and

brought him food. She testified that Biser told her he had taken his insulin that day. She also testified that there were two bottles of insulin in the refrigerator.

Ms. Preston testified that on Tuesday, April 19, 2005, she received a voicemail from one of Biser's family members, who had been unable to contact him. Ms. Preston knocked on Biser's door, but received no response. She opened his door with her master key and found Biser lying on the floor, unconscious. She testified that Biser struggled to breathe, and his feet and left arm had turned black. Ms. Preston instructed a neighbor to call 911, and an ambulance arrived within seven to eight minutes to transport Biser to the hospital.

At the emergency room, Biser underwent a CAT scan of his head, which indicated that he had a possible skull fracture, a small subdural hematoma, and subarachnoid hemorrhage. Additionally, Biser's blood-glucose level was 1,169, and he was in severe diabetic ketoacidosis, a lethal condition resulting from a diabetic's failure to take prescribed insulin. Doctors transported Biser to Grant Medical Center in Columbus, Ohio, where he underwent exploratory surgery in his abdomen. The surgeons discovered that his right bowel and a portion of his right colon were necrotic, a condition from which no one could survive. Biser died several hours later. After performing an autopsy, Deputy Coroner Trent ruled the cause of death to be homicide due to blunt force craniocerebral injuries.

Dr. Glenn Roush, a radiologist, testified that he reviewed Biser's CAT Scan from Biser's emergency room visit on April 19, 2005. He testified that Biser's CAT Scan indicated he had a skull fracture and brain injury that had occurred recently. Dr. Roush also testified that he has "never seen anyone with this sort of injury be able to function."

Dr. William Cox, a forensic neuropathologist serving for the Franklin County Coroner, testified that he reviewed Biser's autopsy protocol, toxicology report, and medical records and determined that the cause of death listed by Dr. Trent on the death certificate was incorrect. Dr. Cox opined that Biser's death resulted from diabetic ketoacidosis. He testified that the punch Biser received and subsequent fall to the ground caused him to suffer contusions to his brain that damaged his frontal lobes. Dr. Cox testified that the damage to Biser's frontal lobes affected his cognitive ability and caused him to become apathetic, uninhibited and disinterested. He further testified that Biser's head injury substantially contributed to his death, and the damage to his frontal lobes "clearly would have adversely affected [Biser's] ability to look after himself."

5

> A jury found Smith guilty on both counts of felonious assault and involuntary manslaughter. After merging the two counts, the trial court sentenced Smith to eight years in prison and ordered him to pay $49,018.33 in restitution, plus court costs on the charge of involuntary manslaughter.

*State v. Smith*, No. 06CA2893, 2007 WL 1165822, at *1-4 (Ohio App. 4th Dist. April 17, 2007).

Petitioner filed a timely appeal, in which he raised the following assignments of error:

> I. THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO PROVE THAT MR. SMITH WAS GUILTY OF INVOLUNTARY MANSLAUGHTER AS ALLEGED IN THE INDICTMENT. THAT DEPRIVED MR. SMITH OF HIS RIGHT TO DUE PROCESS, AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
>
> II. THE JURY'S VERDICT, FINDING MR. SMITH GUILTY OF INVOLUNTARY MANSLAUGHTER, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> III. THE TRIAL COURT ERRED BY IMPOSING RESTITUTION WITHOUT CONSIDERING MR. SMITH'S ABILITY TO PAY.

*Id.* at *4.  On April 17, 2007, the appellate court affirmed the trial court's judgment. *Id.*  Petitioner

timely appealed, raising the following sole proposition of law:

> Felonious assault cannot serve as the predicate offense for involuntary manslaughter, when the decedent's mistreated disease was an unforseeable and abnormal cause of death.  R.C. 2903.01; Crim. R. 29.

On October 3, 2007, the Ohio Supreme Court dismissed Petitioner's motion for leave to appeal.

*State v. Smith*, 115 Ohio St.3d 1421 (2007).

Petitioner also timely sought post conviction relief in the trial court

> While his direct appeal was pending, Smith petitioned the trial court for post-conviction relief under R.C. 2953.21. The basis of the petition was ineffective assistance of counsel during trial. The trial court granted his request for an evidentiary hearing on the issue. After additional motions and appeals concerning the motion, an evidentiary hearing was finally held on April 9, 2009. After the hearing, the trial court issued its decision denying Smith's motion for post-conviction relief. In its entry, the trial court stated that Smith's claim of ineffective assistance of counsel was barred by *res judicata*.

*State v. Smith*, No. 09CA3128, 2011 WL 497472, at *2 (Ohio App. 4th Dist. February. 8, 2011).

Petitioner timely appealed, raising the following assignments of error:

> 1.    THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WAS BARRED BY *RES JUDICATA*.
>
> 2.    THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD NOT DEMONSTRATED GROUNDS FOR POST-CONVICTION RELIEF.

*Id.* at *2. On February 8, 2011, the appellate court affirmed the trial court's dismissal of Petitioner's claims as barred under Ohio's doctrine of *res judicata. Id.* On June 22, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Smith*, 128 Ohio St.3d 1557 (2011).

Represented by the public defender, on September 20, 2011, Petitioner filed this action for a writ of habeas corpus under 28 U.S.C. § 2254. He raises the following sole ground for relief:

> Petitioner was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to investigate and present evidence that the victim's death was not caused by behavior that resulted from his head injury; and by failing to present evidence to rebut the testimony of the State's witnesses. United States Constitution, Sixth and Fourteenth Amendments; *Strickland v. Washington*, 466 U.S. 668 (1984).

7

The decedent, Bryan Biser, was diabetic, and developed diabetic ketoacidosis. The ketoacidosis led to necrotic bowel, and caused his death. Five days before he died, Mr. Biser received a head injury as a result of a single punch from Petitioner, but the injury was not significant enough to cause his death. After Petitioner punched Mr. Biser, he refused treatment at the emergency room for his head injury. He also refused treatment for his Type 1 diabetes, and went home. Mr. Biser died four days later from complications related to his untreated diabetes.

Petitioner was charged with, and convicted of, felonious assault, and involuntary manslaughter, and sentenced to an eight-year prison term. At trial, forensic neuropathologist Dr. Cox testified for the State that Mr. Biser died from diabetic ketoacidosis, but that the head injury from the assault by Petitioner caused his death in an indirect fashion. Although Dr. Cox did not examine Mr. Biser before he died, Dr. Cox opined that Mr. Biser's head injury caused him to become apathetic and disinterested, and he thus neglected his diabetes. In Dr. Cox's opinion, Mr. Biser's head injury played a role in his death in an indirect fashion, in that it caused him to mistreat his diabetes, and he died from the subsequent ketoacidosis. Petitioner did not present any evidence or witnesses at trial.

Petitioner filed a petition for postconviction relief, presenting an affidavit, report, and curriculum vitae of Dr. Elena Christofides, M.D., F.A.C.E., as well as an affidavit from appellate counsel. Dr. Christofides' report included medical and technical information regarding the type of non-prescription insulin that Mr. Biser took, and why it was inappropriate to treat his disease; that she could tell from his GlycoHemoglobin and blood glucose levels that Mr. Biser's diabetes was uncontrolled at the time of the initial assault, and that he overdosed on insulin. Dr. Christofides further explained that medical personnel administered medication to Mr. Biser in order to acutely elevate his blood glucose level, and in her opinion that occurred because he had taken too much insulin. Also, Dr. Christofides testified at the evidentiary hearing that if Mr. Biser's head injury had been the cause of his overdose on insulin, he would have been unconscious and in a diabetic coma within twenty-four to forty-eight hours from the time of the assault. However, Mr. Biser was up and talking to his family and neighbors over the next several days, and was not found unconscious until four days after the assault.

8

> Appellate counsel's affidavit related to her investigation of trial counsel's strategy – that trial counsel did not investigate whether Mr. Biser's diabetes was properly treated or controlled, the way in which his diabetes was mismanaged, or the time frame of the onset of ketoacidosis in relation to the assault.

*Petition.*

It is the position of the Respondent that Petitioner's claim is procedurally defaulted. Alternatively, Respondent contends that Petitioner's claim, in any event, is without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a

state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court determines that the petitioner failed to comply with an adequate and independent state procedural rule, then the petitioner must demonstrate good cause for his failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

The state appellate court affirmed the trial court's dismissal of Petitioner's post conviction petition as barred under Ohio's doctrine of *res judicata*:

> John F. Smith, Defendant-Appellant, appeals the decision of the Ross County Court of Common Pleas, denying his petition for post-conviction relief based on ineffective assistance of counsel. Smith argues the court erred in finding that his petition was barred by res judicata and in finding that he failed to establish adequate grounds for his petition. However, the evidence Smith relied on in his postconviction petition was in the trial court record and available during his direct appeal. Further, ineffective assistance is not demonstrated merely because a postconviction petition presents new expert opinion that is different from a theory used at trial. As such, we find the trial court properly determined that Smith's postconviction petition was barred by the doctrine of res judicata.
>
> ***
>
> Smith argues that the trial court incorrectly determined that his petition for postconviction relief was barred by the doctrine of res judicata. In his petition, Smith argues that he was denied effective assistance of counsel during trial. In denying the petition, the trial court reasoned that Smith could have brought a claim of ineffective

10

assistance during his direct appeal and, thus, he was precluded from raising the issue in postconviction proceedings.

"Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph 9 of the syllabus. Additionally, res judicata applies to proceedings involving postconviction relief. *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 95. But the application of res judicata in postconviction proceedings is not absolute.

The doctrine of res judicata may be overcome in a postconviction proceeding if the petitioner presents competent, relevant, and material evidence outside the record. See, e.g., *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, citing *State v. Smith* (1985), 17 Ohio St.3d 98, 101, 477 N.E.2d 1128, fn. 1. "However, the evidence presented outside the record must meet some threshold standard of cogency; otherwise, it would be too easy to defeat the res judicata doctrine by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *In re J.B.,* 12th Dist. Nos. CA2005-06-176, CA2005-07-193, CA2005-08-377, 2006-Ohio-2715, at ¶ 16. "Moreover, claims that could have been raised based on evidence in the record are also barred by res judicata even though the petitioner may have presented some additional evidence outside the record." *State v. Turner,* 10th Dist. No. 04AP-1143, 2006-Ohio-761, citing *State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, at the syllabus, and *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205.

As previously stated, Smith bases his petition for post-conviction relief on a claim of ineffective assistance of counsel during trial. Smith argues that his trial counsel's representation was deficient because counsel failed to present expert testimony concerning the proximate cause of Biser's death. During the postconviction evidentiary hearing, Smith presented the testimony of Dr. Christofides, an endocrinologist, on that issue. Smith's post-conviction petition relies almost entirely upon Dr. Christofides'

testimony during the post-conviction evidentiary hearing of April 9, 2009.

During Smith's trial, Dr. William Cox testified that Biser's death ultimately was a result of diabetic ketoacidosis. But he also stated that Biser's death was causally related to Smith's assault. Cox stated that the assault caused injury to the frontal lobes of Biser's brain which affected his cognitive ability and made him apathetic and disinterested. As a result, Biser failed to take insulin for his diabetes and he went into diabetic ketoacidosis. During the post-conviction evidentiary hearing, Dr. Christofides presented an alternate theory regarding the cause of Bryan Biser's death. Dr. Christofides testified that, in her opinion, the head injury resulting from Smith's assault did not result in Biser's death. Instead, it was Dr. Christofides opinion that Biser's death was simply the result of his longstanding mismanagement of his diabetes.

During cross-examination, the State questioned Dr. Christofides as to the source of the evidence she used in formulating her theory:

Q.: "You talked about the type one diabetes which obviously that was something everybody was aware of at the time of trial, correct?"

A.: "Correct."

Q.: "So, that wasn't new information to defense counsel at the time of trial, correct?"

A.: "I don't think so."

* * *

Q.: "And all the information that we've been talking about as far as the overdoses and things of that nature, that was all available at the time of the trial, correct?"

A.: "As far as I can see."

Q.: "It was all stuff that's in 2005 records, correct?"

12

A.: "As far as I can see."

Q.: "Okay. Now, you say you observed Dr. Cox's testimony. You went through the records on Dr. Cox's testimony, correct. Did you note that defense counsel addressed the issues of increased blood glucose levels during Dr. Cox's testimony?"

A.: "Yes."

Q.: "And the affidavit that you prepared in and the conclusions that you reached and the, when this petition was initially filed, this is based, that was all originally based on information that was provided to you that was available at trial, is that correct?"

A.: "Correct."

Dr. Christofides' testimony clearly shows that her theory as to the proximate cause of Biser's death was based on evidence which was available at the time of Smith's trial. As such, a claim of ineffective assistance of counsel based on that evidence should have been raised in Smith's direct appeal. More importantly, as shown below, Ohio courts have held that the presentation of alternate theories by expert witnesses in postconviction proceedings will not defeat the application of res judicata.

"A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial." *Combs* at 103. "[T]o the extent that appellant may now wish to expand upon the point, it is settled that a postconviction petition does not demonstrate ineffective assistance of counsel even when it presents a new expert opinion that is different from the theory used at trial." *State v. Cornwell,* 7th Dist. No. 00-CA-217, 2002-Ohio-5177, at ¶ 46. See, also, *State v. Roseborough,* 5th Dist. Nos. 09 COA 003, 09 COA 004, 2010-Ohio-1832, at ¶ 17; *State v. Tenace,* 6th Dist. No. L-05-1041, 2006-Ohio-1226, at ¶ 26; *State v. Turner,* 10th Dist. No. 04AP-1143, 2006-Ohio-761, at ¶ 35; *State v. White* (August. 7, 1998), 5th Dist. No. 97COA01229, at *9.

13

In *State v. Tenace,* the petitioner for post-conviction relief argued that he had been given ineffective assistance of counsel during trial. In his petition, he included the affidavit of an expert witness who stated that the appellant suffered from low serotonin levels. The petitioner argued that his trial counsel rendered ineffective assistance because he failed to investigate and present evidence linking the appellant's low levels of serotonin and his violent behavior. In finding that the petitioner had failed to present evidence to substantiate his postconviction petition, the court stated "this affidavit only proves that there was another possible defense strategy available. The mere existence of an alternative theory of defense, however, is insufficient to establish ineffective assistance of counsel." *Tenace* at ¶ 26.

The ruling in *Tenace* is analogous to the case sub judice. Here, Dr. Christofides is simply presenting another theory as to the proximate cause of Biser's death. Ohio case law clearly shows that alternate or supplementary theories from expert witnesses, which are presented in postconviction proceedings, are not sufficient to establish ineffective assistance of counsel and overcome the application of res judicata. Accordingly, we overrule Smith's first assignment of error.

The record clearly shows that the evidence Dr. Christofides relied on was available at the time of trial. Because such information was in the trial record, Smith could have and should have raised issues relating to that evidence at the time of his direct appeal. Additionally, alternate theories presented by an expert witness during postconviction proceedings do not show that the petitioner had ineffective assistance of counsel. As such, we find that Smith's postconviction petition is barred by the doctrine of res judicata. As Smiths' petition is barred by res judicata[.]

*State v. Smith*, 2011 WL 497472, at *2-5.

Petitioner contends that the state appellate court incorrectly concluded his claim of ineffective assistance of counsel was barred under Ohio's doctrine of *res judicata* in refusing to consider his claim on the merits, and that this Court therefore should address the merits of his claim.

Ohio's doctrine of *res judicata* precludes a criminal defendant from raising a claim in post conviction proceedings that should have, or could have been raised, on direct appeal based on

14

evidence already before the trial court. *State v. Perry*, 10 Ohio St.2d 175 (1967). The defendant must demonstrate, for consideration of the merits of his claim in post conviction proceedings, that his claim relies on off-the-record evidence that could not have been raised at trial or on direct appeal. *State v. Tenace*, No.L-05-1041, 2006 WL 664327 (Ohio App. 6th Dist. March 17, 2006)(citing *State v. Cole,* 2 Ohio St.3d 112, 114 (1982); *State v. Lawson*, 103 Ohio App.3d 307 (1995). In Ohio, a post conviction proceeding constitutes a civil collateral attack on a criminal judgment whereby a criminal defendant may obtain review of "constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the trial record." *State v. Turner,* No. 04AP-1143, 2006 WL 391820, at *1 (Ohio App. 10th Dist. February. 21, 2006)(citation omitted).

The state courts declined to address the merits of Petitioner's claim of ineffective assistance of trial counsel, concluding that the information he relied on was available at trial and constituted an alternative defense.

From the above, it is clear that the first two prongs of the *Maupin* test are satisfied here. First, the state procedural rule prohibiting claim barred by *res judicata* from being raised in postconviction relief is applicable to petitioner's claim of ineffective assistance of counsel. That is, if his claim could have been raised on direct appeal, then it is barred by *res judicata.* Second, the Ohio Court of Appeals did enforce the *res judicata* bar.

The third prong requires the court to determine whether Ohio's *res judicata* state procedural ruling is adequate to preclude federal habeas corpus review. That is a question of federal law. *Beard v. Kindler,* 130 S.Ct. 612, 617 (2009). *Lee v. Kemna*, 534 U.S. 362, 375 (2002). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's *res judicata* rule is an

adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." Id. at 423 (*quoting James v. Kentucky*, 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of res judicata, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the *res judicata* rule does not rely on or otherwise implicate federal law. Although petitioner challenges the application of the rule to the facts supporting his postconviction petition, there can be no question that the rule itself is a firmly established state court rule that is independent of federal law and adequate to bar review of

16

the procedurally defaulted claim in federal habeas corpus.

Petitioner may still obtain review of this claim on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." Coleman v. Thompson, 501 U.S. 722, 753 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).

Finally, having found that the Ohio courts relied on a state court procedural bar rule that is independent of federal law and that the *res judicata* rule is enforceable in federal habeas corpus, the court must determine whether petitioner has demonstrated cause for the procedural default enforced by the Ohio courts and resulting prejudice. Cause is an "objective factor external to the defense imped[ing] counsel's efforts to comply" with the state procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). The Magistrate Judge is not so persuaded. Moreover, review of the cases referred to by the state appellate court in concluding his claim was barred by *res judicata* do not compel such a conclusion.

For example, *State v. Tenace*, involved a claim of ineffective assistance of counsel based on defense counsel's failure to investigate or procure an expert witness to testify that Tenace's low serotonin levels contributed to the violent behavior resulting in his criminal convictions. Tenance's proposed expert witness indicated it was possible that Tenace had suffered from low serotonin levels. The appellate court held that such evidence indicated only that defense counsel may have pursued an alternative defense and did not warrant an evidentiary hearing.

Similarly, *State v. Turner*, No. 04AP-1143, 2006 WL 391820 (Ohio App. 10th Dist. February 6, 2006), involved a claim of ineffective assistance of counsel based on defense counsel's failure to

investigate and present psychological and physiological mitigation evidence regarding the effects of low serotonin levels and alcoholism which, Turner argued, led to his inability to control his violent behavior. Turner complained that his attorney failed to investigate the issue, and therefore failed to test Turner to determine whether he suffered from low serotonin levels. The state appellate court held this claim did not warrant an evidentiary hearing, because Tuner had presented only the potential existence of a speculative mitigation theory. Moreover, Turner's attorney already had presented expert testimony regarding Turner's history of substance abuse and his claim therefore constituted an alternative defense that did not amount to ineffective assistance of counsel. *Id.* at *7.

In *State v. Cornwell*, No. 00-CA-217, 2002 WL 31160861 (Ohio App. 7th Dist. September. 24, 2002), and *State v. Combs*, 100 Ohio App.3d 90, 103 (Ohio App. 1st Dist. August. 24, 1994), also involving claims of ineffective assistance of counsel, the new proposed expert testimony was merely cumulative, or expanded, on evidence that had already been presented in the state trial courts.

Here, on the other hand, Petitioner's proposed expert testified that Biser's improper treatment of his diabetes, and not his head injury, caused Biser's death. It was her opinion that Biser had been taking the wrong medication to treat his diabetes and that the timing of Biser's death indicated that the head injury "was medically unrelated to his ultimate cause of death." Petitioner's February 28, 2011 Traverse, Ex. 2, December 26, 2006 Affidavit of Dr. Elena A. Christofides, ¶ 5, PageID 1181. This was a critical issue for the defense. Moreover, Petitioner could not have presented such a defense at trial or supported such a claim on direct appeal, since the State's expert had reached a contrary conclusion, *i.e.*, that the head injury caused by Petitioner made Biser unable to treat his diabetes properly, thereby constituting a proximate cause of Biser's death. Under these circumstances, the Magistrate Judge is unable to conclude that the state court properly rejected

18

Petitioner's claim, which could not have been supported by evidence already available from the record, as barred under Ohio's doctrine of *res judicata*. This Report and Recommendation therefore will address the merits of this claim. *See Raglin v. Mitchell*, No. 00-cv-767, 2012 WL 70570, at *5 (S.D. Ohio Jan. 10, 2012); *White v. Mitchell,* 431 F.3d 517, 527 (6th Cir. 2005); *Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005); *Greer v. Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001)(("[W]hen a state court's reliance on its own rule of procedural default is misplaced, federal habeas review is not be precluded").

## MERITS

Petitioner contends that this Court should conduct a *de novo* review, because the state appellate court refused to address his claim on the merits. Additionally, he contends this Court need not presume any dispositive factual findings of the state courts to be correct. *Traverse*, at 5.

That argument fails to give weight to 28 U.S.C. § 2254(e). Under that statute, the state appellate court's findings of fact are presumed to be correct. Further, the state trial court here alternatively dismissed Petitioner's claim on the merits. Consequently, any factual findings it made supporting that alternative holding are presumed correct under § 2254(e). That decision, therefore, as well as the factual findings of the state appellate court, are entitled to deference under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

The trial court concluded Petitioner's claim lacked merit in relevant part as follows:

> As background to this case, the defendant, John Smith, was indicted by the Ross County Grand Jury on one count of felonious assault and on a second count of involuntary manslaughter from an incident occurring on April 15, 2005. The deceased victim, Bryan Biser, had attempted to quiet down several people present at an altercation between two five-year-olds and was struck by the defendant and knocked to the ground.

19

At the emergency room the victim showed a relatively high level of blood sugar and possible signs of skull fracture, something which was confirmed four days later.  He declined treatment, stating lack of funds to pay for such.  On April 19 he was found on his floor struggling to breathe; and an arm and both feet had turned black.

The immediate cause of death was determined to be diabetic ketoacidosis, with an extremely high level of blood sugar noted.  The autopsy that was thereafter performed indicated contusions to Biser's brain with damaged frontal lobes.  This had caused confusion and apathy that were found to have substantially contributed to his death.  His ability to care for himself was determined to have been clearly adversely affected by the blow inflicted by defendant.

At trial the defendant was found guilty on both counts and was sentenced to eight years, the sentences being merged.  The conviction and sentence were affirmed on appeal.  In its opinion the court of appeals importantly noted that a tortfeasor or those accused take the victim as they find him and the chain of causation is not thus broken by a preexisting condition.

***

The primary argument advanced by the petitioner is that defense counsel's representation at trial was deficient in that he failed to call an expert witness on the question of the proximate cause of death.

***

There was an abundance of testimony showing that Bryan Biser had a concussion as a result of the blow by the defendant.  As a result, he suffered loss of memory, confusion and apathy.  He was afflicted with Type I diabetes, had no doctor and apparently could afford no medical attention, and he had been self-treating with insulin shots for an unknown length of time without any known difficulties.

He appeared to be healthy and functioning normally prior to the incident and four days later he was dead.  Afer the assault, he was disoriented.  Dr. Cox attributed the cause to the trauma.  Dr. Christofides blames Biser's glucose level, but does not explain with any specificity the level at any given time.

Also, Dr. Christofides readily conceded that her specialized field was endocrinology and as such she was not qualified to comment on or

refute the testimony of Dr. Cox, a forensic pathologist who handles the neuropathology cases for the Franklin County Coroner's Office.

The defense expert was handicapped in making her analysis due to a lack of medical records and history of the victim's case. The victim had been diagnosed with diabetes and had refused to attend any educational courses or learn exactly what treatment and testing was required. He had been self-medicating with some kind of insulin with no apparent problems prior to the April 15 incident with the defendant.

The expert described a honeymoon phase that a patient may have of from six months to a year from diagnosis, after which a patient will start to decompensate. However, she did not have any dates or estimates as to where the victim may have been in this progression. Thus she could not testify as an expert with any degree of medical certainty or probability as to the cause of death. Also, defense counsel reasonably would not want to risk a failure to qualify this witness to testify as an expert. That could greatly prejudice his case before the jury.

The defendant takes his victim as he finds him. This victim was a diabetic and lived in poverty such that he could have no proper medical treatment of the kind Dr. Christofides assumed fitting. There is no evidence of what treatment the victim administered to himself. He lived four days and in his traumatized state apparently overdosed sometime in that period.

Based on the record before the court it cannot be reasonably argued that the defendant was deprived of a fair trial. The issue in question was aggressively pursued on cross-examination, the risk of not having his expert qualify was avoided and counsel functioned properly in affording the defendant a fair and adequate trial.

*Exhibit 27 to Return of Writ.*

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §

2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

21

rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"The focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. at 694. To obtain habeas corpus relief, Petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon,* ___ U.S.___ ,132 S.Ct. 26, 27 (2011) (quoting *Harrington v. Richter,* 562 U.S. __, __, 131 S.Ct. 770, 786–87 (2011). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was

> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687; *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result fo the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Magistrate Judge determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The standards imposed under *Strickland*, and that of 28 U.S.C. § 2254(d) are both "highly deferential," such that, when applying them together, this Court's "review is 'doubly' so." *Harrington,* 131 S.Ct. at 788. The "question is not whether counsel's actions were reasonable" but " whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Here I cannot say that the Ohio courts erred when they held that Petitioner had failed to demonstrate that his trial counsel's performance was so deficient as to fail to function as the counsel guaranteed by the Sixth Amendment. First, during the Ohio postconviction proceedings Petitioner

offered no admissible evidence regarding his trial counsel's decisions about whether to offer expert testimony at trial. Their case files were not offered into evidence, and they did not provide affidavits or testify at the April 9, 2009 hearing on the postconviction petition. December 15, 2011 Return of Writ, Doc. 6-8, PageID 1087. Petitioner did file with the postconviction petition the December 26, 2006 affidavit of Sheryl Trzaska, which states, in relevant part:

> 4. I contacted trial counsel, Dan Silcott, and Gary McCleese, to inquire as to why no evidence was presented on Mr. Smith's behalf, regarding Mr. Biser's metabolic health.
> 5. Attorney McCleese could not recall what was investigated, and suggested I speak with Mr. Silcott. Mr. Silcott stated that he contacted an expert witness regarding Mr. Biser's head injury, but did not conduct any investigation into the state of Mr. Biser's metabolic health.

Petitioner's February 28, 2012 Traverse, Exh. 4, Doc. 10-1, PageID 1189.

Second, the trial court's factual findings and legal conclusions regarding the testimony of Dr. Christofides are binding on this court. 28 U.S.C. §§ 2254(d) and (e)(1). As the trial court pointed out, Dr. Christofides surmised that Mr. Biser was not properly caring for his diabetes before and after the assault, but she did not base that opinion on facts of record and there was evidence of record that his diabetes was controlled before the assault, but not after. Before the assault, Biser had been self-treating his diabetes for an unknown period of time without any known difficulties and appeared to be health and functioning normally.

On April 15, 2005 Smith assaulted Biser, who lost consciousness and was taken to the emergency room. There his pupils were round and equal in size. He denied pain anywhere. He answered questions and followed commands appropriately. He complained of a bump on the back of his head and had a laceration of the right eye. He had an elevated blood-glucose level of 465. Biser refused treatment and refused a CAT scan. He said he had insulin and did not need to purchase

24

any from the hospital. He was discharged with instructions to return immediately if he experienced vomiting, confusion or vision problems.

Later that day, Ms. Preston and Ms. Jones checked on Biser. Preston testified that Biser seemed confused and did not remember being in a fight. He said he had been singing karaoke that night.

On April 16, 2005, Biser did not invite Preston and Jones in. He said he felt sick at his stomach and asked them to leave him alone. His cousin Beth Spangler visited Biser three times that day. In the morning, she gave him Advil for a headache. At 1:00 p.m., Biser continued to complain that his head hurt, and he wanted everyone to go away. At 5:00 p.m., Spangler brought Biser food. Biser said he had taken his insulin that day. There were two bottles of insulin in the refrigerator.

There is no evidence regarding Biser's behavior or condition for the next two days. On April 19, 2005, Preston received a voicemail from one of Biser's family members who had been unable to contact him. She went to his door, entered, and found him unconscious. In the emergency room a CAT scan showed a possible skull fracture. His blood glucose level was 1,169. The diagnosis was severe diabetic ketoacidosis, a lethal condition resulting from a diabetic's failure to take prescribed insulin.

Dr. Trent, the deputy coroner, found that the cause of death was homicide due to blunt force craniocerebral injuries. At trial, Dr. Glenn Roush, a radiologist, testified that the April 19, 2005 CAT scan showed a skull fracture and recent brain injury. He had "never seen anyone with this sort of injury be able to function."  Dr. William Cox, a forensic neuropathologist, testified that the cause of death was diabetic ketoacidosis. He said that contusions to the frontal lobes of the brain affected Biser's cognitive ability. He became apathetic, uninhibited and disabled. The head injury

25

substantially contributed to his death because it "clearly would have adversely affected his ability to look after himself."

While reasonable jurists might disagree, the trial court's finding that Dr. Christofides "could not testify as an expert with any degree of medical certainty or probability as to the cause of death;" and, consequently, that her testimony did not demonstrate that trial counsel's performance in failing to offer comparable testimony at trial was so deficient as to deprive Petitioner of the effective assistance of counsel at trial is supported by substantial evidence and I cannot say that the decision is contrary to or involved an unreasonable application of clearly established federal law

Accordingly, the Magistrate Judge RECOMMENDS that the petition for writ of habeas corpus be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


                                        s/Mark R. Abel
                                        United States Magistrate Judge